[No. B009694. Second Dist., Div. Five. Sept. 12, 1985.]

COVE, INC., Plaintiff, Cross-defendant and Appellant, v.
JETT S. MORA et al., Defendants, Cross-complainants and Appellants.

**[Opinion certified for partial publication.\*]**

\*Pursuant to California Rules of Court, rule 976(b) and 976.1, this opinion is certified for partial publication. The portion of the opinion certified for publication follows.

**COUNSEL**

MacDonald, Halsted & Laybourne, Orville A. Armstrong, Darlene E. Rabe and Gary L. Urwin for Plaintiff, Cross-defendant and Appellant.

Joseph S. Fischbach for Defendants, Cross-complainants and Appellants.

## OPINION

**HASTINGS, J.**—Plaintiff, cross-defendant and appellant, The Cove, Inc. (the Cove) appeals a court order granting a new trial to defendants, cross-complainants, Jett S. Mora and Priscilla B. Mora (the Moras), and from an order denying the Cove attorneys' fees pursuant to section 1717 of the California Civil Code.

. . . . . . . . . . . . . . . . . . . . . .*

The Moras owned the Chancellor Hotel located in Los Angeles, California. When they purchased the hotel, the Cove was a lessee of a portion of the premises which it operated as a restaurant. The parties became embroiled in numerous disputes over their respective rights and duties as lessor and lessee. The Cove eventually filed a one-count multicause of action complaint alleging breach of lease and trespass, and seeking declaratory and injunctive relief. The Moras filed a cross-complaint seeking a declaration that the lease was voidable and damages for breach of lease, nuisance and other causes of action. Both the complaint and cross-complaint sought attorneys fees.

After a six-week jury trial, the jury returned a general verdict in favor of the Cove in the amount of $18,000 actual damages and $60,000 punitive damages. The Cove had sought damages for lost profits of approximately $263,000 and punitive damages of $900,000. The court entered judgment in accordance with the jury verdict. The court sitting without a jury granted the Cove's request for an injunction, denied that of the Moras, and adjudicated the remaining issues in favor of the Cove.

The Moras moved for a new trial and judgment notwithstanding the verdict. The evidence submitted in support of the motion was a set of five identical declarations from five members of the jury. Each declaration stated:

"I, [Juror], say and declare as follows:

"That I was one of the jurors in this action. That I am submitting this declaration based upon facts within my personal knowledge at the request of (the Moras' counsel).

---

*See footnote, *ante*, page 97.

"That the jury specifically found that the plaintiff did not prove by a preponderance of the evidence that the conduct of Mr. Mora proximately caused lost profits. Our award of $18,000 is for general emotional upset/pain and suffering.

"I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

"Executed this __ day of December 1983, at Los Angeles, California.

"/s/ [Juror]"

In granting the new trial, the minute order of the court contains the following: "The defendants' (the Moras') motion for new trial against Plaintiff (the Cove) is granted on the issue of damages only. Said ruling is based on the declarations of jurors showing that the jury had unlawfully rewarded compensatory damages on a nonexistent legal theory. (*Krouse* v. *Graham,* 19 Cal.3d 59, 80-82.) Absent compensatory damages, there is no basis for punitive damages."

■ The Cove contends the court abused its discretion in granting the new trial because it relied on inadmissible evidence as defined by section 1150 of the California Evidence Code.[1]

Based upon the requirements of this section, the Cove argues that none of the declarations set forth any overt, objectively verifiable acts or statements of any juror or jurors. Instead they contain only conclusional language on the collective mental process of the jury that purports to rationalize the basis for its supposedly erroneous verdict. The foundation for this argument, it claims, is found in *People* v. *Hutchinson* (1969) 71 Cal.2d 342 [78 Cal.Rptr. 196, 455 P.2d 132], and *People* v. *Hall* (1980) 108 Cal.App.3d 373, 380 [166 Cal.Rptr. 578]. In *Hutchinson* at page 350, the court in construing section 1150 stated "The only improper influences that may be proved under section 1150 to impeach a verdict . . . are those open to sight, hearing, and the other senses and thus subject to corroboration." In *Hall,* the court noted, at pages 380-381, "The declarations which appel-

---

[1]This section provides: "(a) Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly. No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined. [¶] (b) Nothing in this code affects the law relating to the competence of a juror to give evidence to impeach or support a verdict."

lant sought to introduce simply asserted, in identical language, each juror's belief and intent at the time he or she signed the verdict. They made no references to any objective events which might account for their asserted mistakes, much less to any objective evidence of misconduct. In short, they presented no admissible evidence of jury misconduct. . . . We conclude that the trial court did not err in granting a motion to strike the declarations, and in denying the motion for a new trial."

The trial court was not impressed with the Cove's argument and in granting the new trial stated that it relied on the case of *Krouse* v. *Graham* (1977) 19 Cal.3d 59, 80-82 [137 Cal.Rptr. 863, 562 P.2d 1022]. In *Krouse* there were four identical juror declarations alleging that "several jurors commented" on their belief that plaintiff's counsel would be paid one-third of the total award. The declarations further recite that the jury "considered" this belief and its award to Mladinov (the plaintiff) was "determined" by adding $30,000 for legal fees to the $60,000 the jury estimated Mladinov would require to hire a helper for 10 years. The defendants moved to strike the declarations on the twin grounds that they contained inadmissible evidence and involved the "mental processes" of the jurors. The Supreme Court opinion (by Justice Richardson) discusses Evidence Code section 1150, subdivision (a), and *People* v. *Hutchinson, supra,* 71 Cal.2d 342. In commenting on the jurors' declarations the opinion states, "An assertion that a juror privately 'considered' a particular matter in arriving at his verdict, would seem to concern a juror's mental processes, and declarations regarding them, accordingly, would be inadmissible under section 1150. It is not clear from the record whether the jury's treatment of attorneys' fees constituted 'overt acts objectively ascertainable' and thus admissible, or rather may more properly be described as evidence of the jury's 'subjective reasoning processes' and thus excludable, all as more fully developed in *Hutchinson.* . . . [¶] Although the declarations before us are inconclusive regarding the nature and extent of any open discussion or agreement between the jurors regarding the subject of attorneys' fees, they do concur in alleging that the Mladinov verdict was inflated by $30,000 to compensate her for her attorneys' fees. This, of course, is a serious matter and, without indicating our own views as to the merits, we conclude that the declarations, taken together, raise an issue of sufficient moment that, in fairness, the declarations should have been admitted and considered by the court in its ruling upon defendant's motion for new trial." (19 Cal.3d at pp. 81-82.)

With the *Krouse, Hutchinson,* and *Hall* cases in mind, we turn to some of the colloquy between the court and counsel at the hearing on the motion for a new trial because it helps to pinpoint the court's reasoning and the Cove's argument.

"MR. ARMSTRONG [the Cove's counsel]: What I read here [the declarations] is it says that the jury specifically found that the plaintiff did not prove by a preponderance of the evidence that the conduct of Mr. Mora proximately caused loss profits.

"That statement is not any declaration as to what one juror said or what one juror did. As a matter of fact, it doesn't even set forth the statement as to what the jury itself said or what any member of the jury said. . . . [¶] What testimony is there of some overt act objectively ascertainable which can be verified? . . .

"THE COURT: —how do you distinguish Krouse from this?

"MR. ARMSTRONG: I can distinguish Krouse from this in this way: If Juror No. 1 files a declaration that says, 'I was in the jury room and I talked to Juror No. 2 and I said to Juror No. 2 that there are no lost profits in this case, and Juror No. 2 said, "I agree," and somebody then says "Well, what shall we do about it?" And then somebody else says, "Well, let's give them some other damages." ' That then becomes the effective statements of the jurors which can be used. . . .

"THE COURT: Well, in Krouse they just said the court reasoned the discussion and agreement were matters objectively verifiable.

· "MR. MACDONALD [sic—MR. ARMSTRONG]: That's right.

"THE COURT: Just like in our case the jurors saying they didn't find any lost profits is objectively verifiable.

"MR. MACDONALD [sic—MR. ARMSTRONG]: No, that doesn't say there's a discussion.

"THE COURT: All right."

The court then concluded its final comment on this issue by citing the portion of the Krouse opinion cited above.

Subsequent to the filings of the briefs in this case, our Supreme Court decided Sanchez-Corea v. Bank of America (1985) 38 Cal.3d 892 [215 Cal.Rptr. 679, 701 P.2d 826]. The Bank of America challenged the jury verdict, which awarded damages to the Sanchez-Coreas against the bank for $2.1 million, on the declaration of one of the jurors, Ms. Bonnell. By declaration she declared that no jury vote was taken on the bank's liability and she did not agree to liability, but that she voted for damages as a compro-

mise because she thought that liability had been decided and she felt pressured by her employer to return to work. In disallowing this challenge to the verdict the opinion states, "The applicable rule is explained in *People* v. *Hutchinson, [supra]*, 71 Cal.2d 342, holding that Evidence Code section 1150 'prevents one juror from upsetting a verdict of the whole jury by impugning his own or his fellow jurors' mental processes or reasons for assent or dissent. The only improper influences that may be proved under section 1150 to impeach a verdict, therefore, are those open to sight, hearing, and the other senses and thus subject to corroboration.' (*Id.*, at p. 350.) Ms. Bonnell's declaration dealt only with jurors' mental processes and reasons for assent or dissent and was inadmissible for purposes of undermining the verdict. [Citations.]" (38 Cal.3d at p. 910.)

Returning to our present case, it is clear that the declarations of the five jurors do not meet the standards required by Evidence Code section 1150 and *People* v. *Hutchinson, supra,* and the other cases cited.

The only question remaining is whether the court properly admitted the declarations under *Krouse* v. *Graham, supra,* 19 Cal.3d 59. *Krouse* is clearly distinguishable from our present case. The Supreme Court remanded the case to the trial court for reconsideration of the declarations in conjunction with all other relevant matters necessary to determine the motion. The reason for the remand was that the declarations were inconclusive regarding the nature and extent of any open discussion or agreement between the jurors regarding the subject of attorneys fees. In other words, the declarations did raise the possibilities that there were overt acts on the part of the jurors that would on further investigation verify the statements in the declarations. For example, the declarations in *Krouse* stated two things, one "several jurors commented" on the inclusion of attorneys fees in the award and two, the jury "considered" this factor in "determining" the award. In the declarations before us in our present case, such objective and verifiable incidents are lacking. We conclude by agreeing with appellant that the court erred in considering the five jurors' declarations in granting the motion for new trial.

. . . . . . . . . . . . . . . . . . . . .*

The order granting the Moras a new trial and denying the Cove attorneys

---

fees are reversed. The order granting the Cove a new trial on damages on the Moras' cross-complaint is affirmed.[3]

Feinerman, P. J., and Ashby, J., concurred.

A petition for a rehearing was denied September 30, 1985, and the petition of defendants and appellants for review by the Supreme Court was denied November 20, 1985.

---

[3]The dispositions as to the Cove attorneys' fees and cross-complaint are not relevant to the published portions of this opinion.