[No. D010534. Fourth Dist., Div. One. Dec. 18, 1990.]

WAYNE N. FORD, Plaintiff and Appellant, v.
FRANK J. BENNACKA et al., Defendants and Respondents.

**COUNSEL**

Becker & Jacobovitz and Victor Jacobovitz for Plaintiff and Appellant.

Shifflet, Walters, Bailey & Kane, Douglas F. Walters, Christie Morgan and Gregory C. Kane for Defendants and Respondents.

**OPINION**

**KREMER, P. J.**—Plaintiff Wayne N. Ford appeals a judgment by special verdict favoring defendants Frank J. and Jason Bennacka (Bennacka) on Ford's personal injury complaint for negligence, negligent supervision and negligent entrustment involving a motorcycle accident. Ford contends the superior court should have granted a new trial on the ground of asserted jury misconduct. We affirm the judgment.

## I

### SUPERIOR COURT PROCEEDINGS

Alleging he suffered personal injuries in a motorcycle accident, Ford sued Bennacka for negligence, negligent supervision, and negligent entrustment. Answering Ford's complaint, Bennacka affirmatively defended by alleging Ford's comparative negligence.

The matter was tried to a jury. The court instructed the jury on negligence, comparative negligence, and burden of proof by a preponderance of the evidence. The court also informed the jury it had the duty to follow the

law. By special verdict the jury unanimously found Bennacka was not negligent.

Ford sought a new trial on the ground of jury misconduct. (Code Civ. Proc., § 657, subd. 2.) Supporting his motion for new trial, Ford submitted declarations of five jurors essentially asserting the jury confused the concepts of comparative negligence and preponderance of the evidence.[1] Opposing Ford's motion, Bennacka asserted the juror declarations could not properly be used to impeach the mental processes the jury followed to reach its result. After hearing argument by counsel, the court denied Ford's motion for new trial. Ford appeals.

## II

### DISCUSSION

In denying Ford's motion for new trial, the court concluded the statements in the juror declarations pointed "to no act or occurrence but appeared to show the mental processes of the jurors in arriving at the verdict they rendered. As such, the defendants' argument is well taken, that the statements are not admissible as they attempt to impeach the verdict."

■ Relying on *Krouse* v. *Graham* (1977) 19 Cal.3d 59 [137 Cal.Rptr. 863, 562 P.2d 1022], Ford contends the juror declarations were admissible and thus the court erred in not granting a new trial on the ground of prejudicial jury misconduct.[2] We disagree. The court properly excluded the juror declarations and correctly denied a new trial.

---

[1] The form declaration prepared by Ford's counsel stated:

"I served as a juror on the case of Wayne Ford vs. Frank Bennacka, etc., et al.

"In our jury deliberations, we reached a consensus that both sides were at fault, namely, 50% negligence as to each. Therefore, because each side was equally negligent, we had to return a verdict in favor of the Defendants because the Defendants' negligence did not preponderate over the negligence of the Plaintiff. We all agreed that if the Defendants had been more negligent than Plaintiffs [*sic*], we could and would have given the verdict to the Plaintiff."

Juror Stephens added a handwritten sentence to her declaration stating: "I felt the defendant was 51% at fault, and the plaintiff was 49% at fault." Juror Anderson modified the second sentence of the second paragraph of his attorney-prepared declaration to provide: "Therefore, because each side was equally negligent, we *did* return a verdict in favor of the Defendants because the Defendants' negligence did not preponderate over the negligence of the Plaintiff." (Italics added.)

[2] In *Krouse* v. *Graham, supra,* 19 Cal.3d 59, the Supreme Court remanded the matter to the superior court to reconsider juror declarations about asserted jury misconduct in determining a motion for new trial. In *Krouse* four identical declarations of jurors alleged "several jurors commented" on their belief the plaintiff's counsel would be paid one-third of the total award, the jury "considered" that belief, and the jury "determined" its award by adding legal fees to the amount of plaintiff's damages. The Supreme Court noted: "An express agreement by the

A

### APPLICABLE LAW

Evidence Code section 1150, subdivision (a), provides: "Upon an inquiry as to the validity of a verdict, any otherwise admissible evidence may be received as to statements made, or conduct, conditions, or events occurring, either within or without the jury room, of such a character as is likely to have influenced the verdict improperly. No evidence is admissible to show the effect of such statement, conduct, condition, or event upon a juror either in influencing him to assent to or dissent from the verdict or concerning the mental processes by which it was determined."[3]

In construing section 1150, the Supreme Court stated in *People* v. *Hutchinson* (1969) 71 Cal.2d 342, 350 [78 Cal.Rptr. 196, 455 P.2d 132]: "The only improper influences that may be proved under section 1150 to impeach a verdict . . . are those open to sight, hearing, and the other senses and thus subject to corroboration." The Supreme Court also stated: "This distinction between proof of overt acts, objectively ascertainable, and proof of the subjective reasoning processes of the individual juror, which can be neither corroborated nor disproved, . . . has been the basic limitation on proof set by the leading decisions allowing jurors to impeach their verdicts. [Citations.]" (*Id.* at p. 349.)[4]

Section 1150 "does not envision a procedure whereby a trial judge, as a result of a claim of jury misconduct, reviews a 'replay' of the particular language used by various jurors as they deliberated and makes a subjective determination of its propriety. Such a procedure would be too great an

---

jurors to include [attorney] fees in their verdict, or extensive discussion evidencing an implied agreement to that effect, constitutes misconduct requiring reversal. [Citations.]" (*Id.* at p. 81.)

In *Krouse* v. *Graham, supra,* 19 Cal.3d at pages 80-81, the Supreme Court stated "if the jurors in the present case actually discussed the subject of attorneys' fees and specifically agreed to increase the verdicts to include such fees, such discussion and agreement would appear to constitute matters objectively verifiable, subject to corroboration, and thus conduct which would lie within the scope of [Evidence Code] section 1150. [Citation.]" However, the Supreme Court found the juror declarations to be inconclusive: "It is not clear from the record whether the jury's treatment of attorneys' fees constituted 'overt acts, objectively ascertainable' and thus admissible, or rather may more properly be described as evidence of the jury's 'subjective reasoning processes' and thus excludable, all as more fully developed in [*People* v. *Hutchinson* (1969) 71 Cal.2d 342]." (*Id.* at p. 81.) The Supreme Court thus vacated the order denying new trial and directed the superior court to admit the declarations and reconsider the motion. (*Id.* at p. 82.)

[3] All statutory references are to the Evidence Code unless otherwise specified.

[4] The Supreme Court in *People* v. *Hutchinson, supra,* 71 Cal.2d 342, permitted juror declarations about improper statements a bailiff made to the jury.

extension of the court's limited authority to invade the traditionally inviolate nature of the jury proceedings." (*Johns* v. *City of Los Angeles* (1978) 78 Cal.App.3d 983, 989-990 [144 Cal.Rptr. 629].) "If there is one thing which is clear from the language of Evidence Code section 1150 and the case law dealing with the subject, it is that the mental processes of the jurors are beyond the hindsight probing of the trial court." (*Maple* v. *Cincinnati, Inc.* (1985) 163 Cal.App.3d 387, 394 [209 Cal.Rptr. 451].)[5]

"In spite of the perception that, in recent times, the law concerning the ability of jurors to impeach a verdict has been liberalized, the process must be carefully scrutinized and controlled." (*Maple* v. *Cincinnati, Inc., supra*, 163 Cal.App.3d at p. 393.) "In cases of a 'deliberative error' which appears to produce a mistaken or erroneous verdict, the result has almost invariably been to bar impeachment of the verdict." (*People* v. *Romero* (1982) 31 Cal.3d 685, 694 [183 Cal.Rptr. 663, 646 P.2d 824].)

In *People* v. *Hall* (1980) 108 Cal.App.3d 373, 379 [166 Cal.Rptr. 578], the appellate court rejected "appellant's theory that a *mistake* on the part of jurors constitutes misconduct which can be evidenced by the affidavits of the jurors themselves." (Italics in original, cited with approval in *People* v. *Romero, supra*, 31 Cal.3d at p. 695.) The appellate court in *Hall* noted: "The courts have been firm . . . in precluding affidavits which do no more than characterize the affiant's own state of mind [citation] or the state of mind of other members of the jury [citations]." (*People* v. *Hall, supra*, at p. 380.) In affirming an order striking juror declarations and denying a new trial, the appellate court in *Hall* stated: "The declarations which appellant sought to introduce simply asserted, in identical language, each juror's belief and intent at the time he or she signed the verdict. They made no reference to any objective events which might account for their asserted mistakes, much less to any objective evidence of misconduct. In short, they presented no admissible evidence of jury misconduct . . . ." (*Id*. at pp. 380-381.)

In *Sanchez-Corea* v. *Bank of America* (1985) 38 Cal.3d 892 [215 Cal.Rptr. 679, 701 P.2d 826], the defendant bank challenged a $2.1 million

---

[5] In *Maple* v. *Cincinnati, Inc., supra*, 163 Cal.App.3d at page 394, the appellate court stated: "The trial judge simply made a subjective determination that the jurors didn't think or analyze the case 'correctly,' a determination triggered by statements of a juror who had voted in the minority. [¶] If a trial judge believes that the evidence is objectively insufficient as a matter of law to support a verdict, he or she of course has the power under Code of Civil Procedure section 657 to order a new trial on that basis. The trial judge does not, however, have the power to pass judgment on the correctness of the jurors' thought processes involved in weighing the evidence. [¶] . . . [A]ttempts by judges to straight jacket a jury in its deliberations by an after-the-fact critiquing and criticizing of the language and reasoning used in those deliberations runs directly contrary to our fundamental concept of the jury function."

jury verdict for plaintiff. The bank submitted a declaration of a juror asserting the jury did not vote on the issue of the bank's liability, she did not agree to liability, and she voted for damages as a compromise because she thought liability had been decided and she felt employer pressure to return to work. In disallowing the bank's challenge to the verdict, the Supreme Court stated:

"The applicable rule is explained in *People* v. *Hutchinson,* [*supra*], 71 Cal.2d 342 . . . , holding that Evidence Code section 1150 'prevents one juror from upsetting a verdict of the whole jury by impugning his own or his fellow jurors' mental processes or reasons for assent or dissent. The only improper influences that may be proved under section 1150 to impeach a verdict, therefore, are those open to sight, hearing, and the other senses and thus subject to corroboration.' (*Id.,* at p. 350.) [The juror's] declaration dealt only with jurors' mental processes and reasons for assent or dissent and was inadmissible for purposes of undermining the verdict. [Citations.]" (*Sanchez-Corea* v. *Bank of America, supra,* 38 Cal.3d at p. 910.)

In *Cove, Inc.* v. *Mora* (1985) 172 Cal.App.3d 97, 100 [218 Cal.Rptr. 7], the trial court—relying on *Krouse* v. *Graham, supra,* 19 Cal.3d at pages 80-82—granted a defendant's motion for new trial "based on the declarations of jurors showing that the jury had unlawfully [awarded] compensatory damages on a nonexistent legal theory. [Citation.]" The appellate court reversed the order granting new trial. The appellate court agreed with the plaintiff's contention the declarations did not "set forth any overt, objectively verifiable acts or statements of any juror" but instead contained "only conclusional language on the collective mental process of the jury that purports to rationalize the basis for its supposedly erroneous verdict." (*Cove, Inc.* v. *Mora, supra,* at p. 100.)

B

ANALYSIS

Citing *Krouse* v. *Graham, supra,* 19 Cal.3d at page 82, Ford asks us to vacate the order denying new trial and direct the trial court to admit the juror declarations. However, on this record a new trial is not warranted. Moreover, further inquiry into the juror's asserted confusion and misunderstanding of relevant law would simply constitute improper probing of the jurors' subjective mental processes. (*Sanchez-Corea* v. *Bank of America, supra,* 38 Cal.3d at p. 910, *People* v. *Hutchinson, supra,* 71 Cal.2d at pp. 349-350; *Maple* v. *Cincinnati, Inc., supra,* 163 Cal.App.3d at p. 394.)

The juror declarations proffered here do not meet the standards required by statute and case law. The declarations lack objective and verifiable

incidents of juror misconduct. (*De Vera* v. *Long Beach Pub. Transportation Co.* (1986) 180 Cal.App.3d 782, 797 [225 Cal.Rptr. 789]; *Cove, Inc.* v. *Mora, supra*, 172 Cal.App.3d at p. 103; *Ferreira* v. *Quik Stop Markets, Inc.* (1983) 141 Cal.App.3d 1023, 1035 [190 Cal.Rptr. 778]; *People* v. *Hall, supra*, 108 Cal.App.3d at pp. 380-381.) The declarations do not suggest any juror violated the court's instruction to follow the law by recounting his or her own outside experience on a question of law. (*In re Stankewitz* (1985) 40 Cal.3d 391, 396-400 [220 Cal.Rptr. 382, 708 P.2d 1260]; *Young* v. *Brunicardi* (1986) 187 Cal.App.3d 1344, 1349-1352 [232 Cal.Rptr. 588].) The declarations do not describe overt acts, statements, or conduct showing the jury intentionally agreed to disregard applicable law and apply inapplicable law. (Cf. *DiRosario* v. *Havens* (1987) 196 Cal.App.3d 1224, 1233-1235 [242 Cal.Rptr. 423].) Instead, the declarations at most suggest "deliberative error" in the jury's collective mental process—confusion, misunderstanding, and misinterpretation of the law. On this record the court correctly declined to admit the proffered juror declarations to impeach the verdict. (*People* v. *Romero, supra*, 31 Cal.3d at pp. 694-695; *Cove, Inc.* v. *Mora, supra*, 172 Cal.App.3d at p. 100; *People* v. *Hall, supra*, 108 Cal.App.3d at pp. 379-381.)

*Krouse* v. *Graham, supra*, 19 Cal.3d 59, is distinguishable. In *Krouse* the juror declarations suggested the jury knowingly and expressly agreed to inflate damages improperly by including attorney fees. (*De Vera* v. *Long Beach Pub. Transportation Co., supra*, 180 Cal.App.3d at p. 796.) The Supreme Court in *Krouse* remanded the matter because the juror declarations were inconclusive about the nature and extent of any open discussion or agreement among the jurors about the matter of attorney fees; the declarations raised the possibility of overt acts by jurors which on further investigation might verify the statements in the declarations. (*Cove, Inc.* v. *Mora, supra*, 172 Cal.App.3d at p. 103.) Here, however, Ford proffered juror declarations only about their subjective collective mental process purporting to show *how* the verdict was reached.[6] In *Krouse* the Supreme Court held "affidavits showing *discussions* among the jurors are admissible, since they are objectively verifiable and subject to corroboration. But the Supreme Court has not gone as far as [*Drust* v. *Drust* (1980) 113 Cal.App.3d 1 (169 Cal.Rptr. 750)], which allowed affidavits showing *how* the verdict was reached." (*Ferreira* v. *Quik Stop Markets, Inc., supra*, 141 Cal.App.3d at pp. 1034-1035, italics in original.)[7]

Because Ford's attempted impeachment of the verdict rested solely on an attack on the jury's subjective mental processes in reaching the verdict, the court properly denied a new trial.

---

[6] Indeed, Ford characterizes the juror declarations as reflecting "the collective criteria the jurors used to arrive at their verdict."

[7] In *Ferreira* v. *Quik Stop Markets, Inc., supra*, 141 Cal.App.3d at page 1035, the appellate court stated: "*Drust* takes *Krouse* a step farther than permissible, and was wrongly decided."

## DISPOSITION

The judgment is affirmed.

Benke, J., and Nares, J., concurred.